A99A2172. KENDALL v. GRIFFIN-SPALDING COUNTY
HOSPITAL AUTHORITY et al.
A99A2173. SPALDING COUNTY et al. v. GRIFFIN-SPALDING
COUNTY HOSPITAL AUTHORITY et al.
(531 SE2d 396)

BARNES, Judge.

These appeals concern the capacity of a hospital authority to create a trust and delegate to the trust the power and discretion to carry out its functions, missions, and responsibilities. M. Michael Kendall (Case No. A99A2172) and Spalding County and the City of Griffin (Case No. A99A2173) (collectively "Spalding/Griffin") appeal the trial court's judgment following a bench trial in a declaratory judgment action upholding the hospital authority's action.

After Kendall filed this action against the Griffin-Spalding County Hospital Authority ("the Authority"), Spalding County Health Care Trust ("the Trust"), and certain individuals as members of the Authority and the Trust, Spalding/Griffin intervened in the action. Although invited to do so by the trial court, the District Attorney of the Griffin Judicial Circuit and the State Attorney General declined to intervene.

Kendall and Spalding/Griffin complain primarily that the trial court erred by finding that the Authority did not act beyond its authorized powers by creating and operating the Trust. We agree with this contention and, consequently, must reverse the trial court.

The Authority was created in 1945 by resolutions of Spalding/Griffin under a state authorizing act. The Authority administered a hospital and related health care facilities until 1984, when it sold the hospital to a private entity. Under the purchase agreement, some proceeds of the sale were used to establish the Trust, and the initial and subsequent payments for the hospital were deposited into the Trust. The Trust now has assets of over $20,000,000. A second Trust created by the Authority has assets of over $4,000,000.

1. Neither the appellants nor the appellees have complied with Court of Appeals Rule 27 (c) (3). References to exhibits introduced in the trial court without further reference to the volume and page of the record do not satisfy the Rule's requirement to cite to the record on appeal.

2. Spalding/Griffin contends the Trust Agreement shows that the powers granted the Trust by the Authority constitute an impermissible delegation of governmental authority to the Trust. According to Spalding/Griffin, the effect of this delegation was to render the Authority merely an advisory board. Article III of the Trust grants the Trustees authority to:

> pay, distribute, or use the income and principal of this Trust
> in a manner consistent with Article XII *in its sole discretion,*

from time to time only on behalf of and in support of the Grantor for purposes related to providing health or medical services and related social services to the residents of the City of Griffin, Georgia, or Spalding County, Georgia, or for any other health-related purpose permitted to the Grantor under the Georgia Hospital Authorities Law as it exists on October 1, 1996. *The means by which the Trust shall fulfill Grantor's functions, missions and responsibilities shall be determined by the Board of Trustees in its sole discretion*, in connection with the Grantor's recommendations, and shall include, but is not limited to, grants or below-market loans to governmental and charitable organizations; contracts with governmental or other organizations to provide medical or health care services within the scope of the Grantor's authority under the Georgia Hospital Authorities Law as it exists on October 1, 1996.

(Emphasis supplied.)

Spalding/Griffin contends the emphasized text "renders the trust agreement ultra vires, null and void on the grounds that it constitutes an impermissible delegation of governmental authority. . . ."

The Authority argues that its enabling statute permits it to delegate the fulfillment of its functions, missions, and responsibilities to the Trust. Because the Authority's enabling statute does not specifically authorize it to take this action, we must look to see if that authority is necessarily implied from the express grant of other powers. While the Authority's enabling statute provides that it "shall be liberally construed to effect the purposes hereof," OCGA § 31-7-96, the Supreme Court has held that "liberally" in a similar context does not mean "ultra-liberally." *Day v. Dev. Auth. of Adel*, 248 Ga. 488, 490 (284 SE2d 275) (1981). Our question is whether the Georgia Hospital Authorities Law authorizes such a delegation of the Authority's powers to a separate entity.

Statutes should be construed in accordance with their real intent and meaning and not so strictly as to defeat the legislative purpose. *Johnson v. Housing Auth. of Atlanta*, 198 Ga. App. 816-817 (403 SE2d 97) (1991). They should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions to limit or extend their operation. *Burbridge v. Hensley*, 194 Ga. App. 523, 524 (1) (391 SE2d 5) (1990). Statutory construction " 'must square with common sense and reasoning.' " *Tuten v. City of Brunswick*, 262 Ga. 399, 404 (7) (418 SE2d 367) (1992).

The functions and powers of a hospital authority are established in OCGA § 31-7-75, which vests an authority with 27 specific grants

of power that permit it to act as a corporation by, for example, entering into contracts, buying or selling property, and selecting officers. The section further permits the Authority:

(24) To provide management, consulting, and operating services including, but not limited to, administrative, operational, personnel, and maintenance services to another hospital authority, hospital, health care facility, as said term is defined in Chapter 6 of this title, person, firm, corporation, or any other entity or any group or groups of the foregoing; to enter into contracts alone or in conjunction with others to provide such services without regard to the location of the parties to such transactions; to receive management, consulting, and operating services including, but not limited to, administrative, operational, personnel, and maintenance services from another such hospital authority, hospital, health care facility, person, firm, corporation, or any other entity or any group or groups of the foregoing; and to enter into contracts alone or in conjunction with others to receive such services without regard to the location of the parties to such transactions. . . .

(27) To form and operate, either directly or indirectly, one or more networks of hospitals, physicians, and other health care providers and to arrange for the provision of health care services through such networks; to contract, either directly or through such networks, with the Department of Community Health to provide services to Medicaid beneficiaries to provide health care services in an efficient and cost-effective manner on a prepaid, capitation, or other reimbursement basis; and to undertake other managed health care activities; provided, however, that for purposes of this paragraph only and notwithstanding the provisions of Code Section 33-3-3, as now or hereafter amended, a hospital authority shall be permitted to and shall comply with the requirements of Chapter 21 of Title 33 to the extent that such requirements apply to the activities undertaken by the hospital authority pursuant to this paragraph. No hospital authority, whether or not it exercises the powers authorized by this paragraph, shall be relieved of compliance with Article 4 of Chapter 18 of Title 50, relating to inspection of public records unless otherwise authorized by law. Any health care provider licensed under Chapter 30 of Title 43 shall be eligible to apply to become a participating provider under such a hospital plan or network which provides coverage for health care services which are within the lawful scope of his

or her practice, provided that nothing contained in this Code section shall be construed to require any such hospital plan or network to provide coverage for any specific health care service.

Additionally, OCGA § 31-7-74 provides that "[t]he authority shall make rules and regulations for its governance and may delegate to one or more of its members, officers, agents, or employees such powers and duties as may be deemed necessary and proper."

Our courts have held that municipal or public corporations have acted outside the scope of their enabling statutes in connection with various sales and leases. For example, a hospital authority acted ultra vires in operating a store to sell or rent durable medical goods (*Tift County Hosp. Auth. v. MRS of Tifton &c.*, 255 Ga. 164 (335 SE2d 546) (1985)); electric authorities acted or would act ultra vires in selling propane or telecommunications services to the public for hire (*Flint Elec. Membership Corp. v. Barrow*, 271 Ga. 636 (523 SE2d 10) (1999); *Municipal Elec. Auth. of Ga. v. Ga. Pub. Svc. Comm.*, 241 Ga. App. 237 (525 SE2d 399) (1999)); and a development authority acted ultra vires in acquiring real property to lease to a grocery store (*Day v. Dev. Auth. of Adel*, supra, 248 Ga. at 488). These cases in which the authorities' actions were disapproved involved much more restricted endeavors than the broad abdication of power involved here.

The Authority's reliance on *Richmond County Hosp. Auth. v. Richmond County*, 255 Ga. 183 (336 SE2d 562) (1985), is misplaced. The court in *Richmond* approved a hospital authority's lease with four private corporations pursuant to the provisions of OCGA § 31-7-75 (7), which specifically approves such leases subject to certain conditions. The court did not approve a complete transfer of all the hospital authority's functions and responsibilities to the private hospitals. While the Authority is clearly permitted to delegate necessary powers and duties to its officers under OCGA § 31-7-74, we find no authority, express or implied, that would permit the Authority to transfer the power and discretion to carry out all of its functions to a separate entity, as was done in this case. Even construing the statute liberally, we conclude that we cannot interpret it to allow these actions without resorting to " 'subtle and forced constructions.' " *Burbridge v. Hensley*, supra, 194 Ga. App. at 524. Accordingly, we must reverse the trial court on this point. See *Tift County Hosp. Auth. v. MRS of Tifton &c.*, supra, 255 Ga. at 166 (2).

3. In view of our disposition of the error discussed in Division 2, we need not review the remaining enumerations of error in Case No. A99A2173 and the enumerations of error in Case No. A99A2172.

*Judgments reversed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED MARCH 16, 2000.

M. Michael Kendall, *pro se.*

Beck, Owen & Murray, James R. Fortune, Jr., Mullins & Whalen, Andrew J. Whalen III, for appellants (case no. A99A2173).

Bondurant, Mixson & Elmore, M. Jerome Elmore, David G. Brackett, John M. Cogburn, Jr., for appellees.